Philip D. ROBERTS, et al., Plaintiffs,

v.

Werner HEIM, et al., Defendants.

No. C84–8069 TEH.

United States District Court,
N.D. California.

Dec. 9, 1988.

David B. Gold, A Professional Law Corp., Solomon B. Cera, San Francisco, Cal., George Donaldson, San Francisco, Cal., Woodford G. Rowland, Law Offices of Woodford G. Rowland, San Rafael, Cal., for plaintiffs.

Ernest Y. Sevier, Loraine P. Eber, Severson, Werson, Berke & Melchior, San Francisco, Cal., for defendants Somers & Altenbach and Robert E. Altenbach.

Boake Christensen, Richard North Patterson, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant Peat, Marwick, Mitchell & Co.

A. James Robertson, II, Michael Q. Eagan, Pater J. Busch, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for defendant Friedman & Shaftan.

Tristam B. Brown, James J. Corbelli, Lillick, McHose & Charles, San Francisco, Cal., for defendant Houston Harbaugh.

Roger B. Pool, Mark D. Petersen, Farella, Braun & Martel, San Francisco, Cal., for defendant Fox & Co.

Zobrist, Vienna & McCullough, Los Angeles, Cal.

George J. Ziser, Andrew C. Wolin, Moore, Clifford, Wolfe, Larson & Trutner, Oakland, Cal., for defendants Schumacher & Hickey, and Frederick R. Schumacher, Ltd.

Darrell D. McCullough, Denver, Colo., in pro. per.

Kurt C. Peterson, Mary C. Oppedahl, Crosby, Heafey, Roach & May, Oakland, Cal., for defendant T. Kenneth Pyles.

Robert L. Lofts, William L. Stern, Severson, Werson, Berke & Melchior, San Francisco, Cal., for defendant Somers & Altenbach.

Richard North Patterson, Leslie G. Landau, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant Peat, Marwick, Mitchell & Co.

John A. Shutkin, Peat, Marwick, Main & Co., New York City, for defendant Peat, Marwick, Mitchell & Co.

David B. Epstein, Charles Marshall, Margolis, McTernan, Scope & Epstein, Los Angeles, Cal., for defendants Todd M. Doscher, The Doscher Group, Inc., and CLD Group, Inc.

Dennis M. Bourquin, Redwood City, Cal., for defendant William R. Conklin.

Dan Byles, Gates, Clyde & Chartered, Overland Park, Kan., for defendant C. Norris Taylor, Jr.

Michael H. Greenberg, Gary S. Mayerson, Graubard, Moskovitz, Dannett Horowitz & Mollen, New York City, for defendant Richard B. Basile.

George B. Richardson, Holtzman, Wise & Shepard, Palo Alto, Cal., and R. Nichols Gimbel, Holtzmann, Wise & Shepard, New York City, for defendants Lewin Energy Corp., Vello A. Kuuskraa, Technology Catalysts, Inc. and R.L. DiCicco.

Robert L. Leberman, Cheryl G. Weisbard, Sideman & Bancroft, San Francisco, Cal., for defendants American Energy Resources, Inc., AER Investments, The Forsee Group, Drake Oil Tech, Vulcan Oil Technology Partners, Vanguard Oil Technology Partners, Derringer Oil Technology Partners 1981, Crown Oil Technology Partners, Dillon Oil Technology Partners, Der-

ringer Oil Technology Partners 1982, Castaic Oil Technology Partners, Carlton Oil Technology Partners, Ltd., and Louis F. Coppage.

Richard Haas, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for Robert E. Altenbach.

David M. Greenberg, San Francisco, Cal., for Texoil Intern., Inc.

J.A. Cunningham, Boulder, Colo., in pro. per.

Kenneth D. Robin, San Francisco, Cal., for specially appearing non-defendants/TRO respondents: Energy Reserve Resources, Ltd., T. Michael Carrington; Joseph Babich and Larry Melnick.

Robert J. Glynn, Gary A. Cerio, Glynn & Harvey, San Francisco, Cal., for defendant Baskin & Steingut, fka Baskin & Sears.

Neil E. Rogen, Westport, Conn., in pro. per.

Karl A. Schledwitz, Schledwitz, Crow & Washington, Memphis, Tenn., for Louis F. Coppage, American Energy Resources, AER Investments, The Forsee Group, Drake Oil Technology, Vulcan Oil Technology, Derringer Oil Technology, Crowne Oil Tech., Dillon Oil Technology, Carlton Oil Technology.

Gerald Cohn, Special Master, Phillips, Cohn & Greenberg, Orinda, Cal.

David B. Epstein, Garfield, Tepper & Ashworth, Los Angeles, Cal., for defendants Todd Michael Doscher, CLD Group, Inc., and the Doscher Group, Inc.

Robert D. Radcliffe, Busch Forum, Salt Lake City, Utah, for Werner Heim, et al.

James Robertson, Patricia Douglass, Wilmer, Cutler & Pickering, Washington, D.C. for defendants Lewin & Associates.

Robert E. Carey, Jr., Daniel S. Gonzales, Carey & Carey, Palo Alto, Cal., for Republic Intern. Corp.

James H. Seymour, San Francisco, Cal., for Anvil Corp.

E. Lawrence Brock, Salt Lake City, Utah, for (proposed) defendant-intervenor Raymond Brown.

Edward R. Curtin, Gersten, Savage, Kaplowitz & Zukerman, New York City, Richard A. Ardoin, Stan G. Roman, Susan K. Alexander, K.T. Cherian, Bronson, Bronson & McKinnon, San Francisco, Cal., Peter J. Nova, Bronson, Bronson & McKinnon, Santa Rosa, Cal., for Richard B. Basile, The Manhattan Partnerships, Glenda Exploration and Development Co.

## ORDER

THELTON E. HENDERSON, District Judge.

The foregoing recommendations of the Special Master are adopted in their entirety and respondents are ordered to comply with their terms. The Court will issue a separate order with respect to sanctions pursuant to section VIII of the recommendations.

## RECOMMENDATION OF SPECIAL MASTER AND ORDER THEREON

GERALD A. COHN, Special Master.

## I  INTRODUCTION

This opinion deals with a motion to compel production of documents which motion raises issues of attorney/client privilege and work-product privilege in the context of a large class action. All parties to the motion concede that some of the issues raised by this motion are matters of first impression with respect to both federal and state authority.

Plaintiffs in this action are six individuals who invested in four limited partnerships ostensibly organized to produce oil and gas through the use of new "enhanced oil recovery technology" ("EOR"). These named plaintiffs have been certified as class representatives for over 1,000 persons who invested hundreds of millions of dollars in these four partnerships and in 36 other similar partnerships offered between 1979 and 1983. In their Fifth Amended Complaint plaintiffs have advanced various claims under the Securities Act of 1933, the Securities Exchange Act of 1934, Rule 10b–5 and applicable California law. Plaintiffs have named over 100 defendants, including the partnerships, the general partners, the individuals and corporate entities

alleged to be the moving forces behind the partnerships, and an array of accountants, attorneys and consultants who provided services to the partnerships. Plaintiffs allege these 40 partnerships represent a worldwide conspiracy to defraud investors out of hundreds of millions of dollars.

In brief, the crux of the scheme as alleged by plaintiffs is as follows. Plaintiffs claim that certain individuals, led by defendant, Heim, originated the idea of forming these partnerships to sell the investing public on the concept of EOR technology. These individuals recruited the general partners and then arranged for the partnerships to purchase for exorbitant fees from their corporate alter egos the exclusive license to use this "new" technology. Plaintiffs allege this technology was unproven and basically without value, and that the licensors did not have the right to grant an exclusive license. Plaintiffs further allege the partnerships purchased mineral rights from other corporate alter egos of Heim and the others at prices between 700 and 10,000 times their real value. Plaintiffs also contend that the professional defendants were aware, or should have been aware, of the nature and scope of this scheme, and thus joined—at least tacitly—in the scheme to defraud.

In a prior order this Court certified a global class consisting of all persons except defendants who purchased an interest in any of the oil technology group partnerships dismissing some of plaintiffs claims as to some defendants and permitting the case to go forward as to other claims. See *Roberts v. Heim*, 670 F.Supp. 1466 (ND Cal 1987).

Subsequently, defendant, Manhattan Partnerships (described below), brought a motion to decertify the previously certified class. Said motion was unsuccessful. *See Roberts v. Heim* [1988 Transfer Binder] Fed.Sec.L.Rep., (CCH p. 93,747) April 15, 1988 [1988 WL 95043].

Thereafter, at the Court's request, plaintiffs filed a Fifth Amended Complaint, consisting of 110 pages, which sets forth those claims which had survived various prior motions to dismiss, etc.

The Fifth Amended Complaint describes defendant, Manhattan Partnerships, as follows:

*"The Manhattan Partnerships.* In 1979 and 1980, Werner Heim, Winsor T. Savery and Richard B. Basile formed and marketed interests in the partnerships hereinafter identified (the "Manhattan Partnerships"). Each of these limited partnerships is purportedly engaged in the business of drilling for, producing and marketing gas located in the Monroe Field, Louisiana and producing heavy oil on certain properties that purportedly bear heavy oil in Wyoming and Utah. Each of the Manhattan Partnerships has the same corporate and individual general partners, defendants GEDCO and Basile, respectively. Basile purchased GEDCO sometime in 1983. The Manhattan Partnerships, which are purportedly headquartered in GEDCO's and Basile's New York City office, are:" (Thereafter 18 separate limited partnerships are listed. This list includes Boulder Oil and Gas Associates, 1980. ("Boulder"))

The defendant, Richard Basile, is described as follows:

"Richard B. Basile ("Basile") is a resident of New York and is the individual general partner for the Manhattan Partnerships, as hereinabove specified. In 1983 Basile became the president and sole stockholder of defendant GEDCO."

The defendant, Baskin & Steingut is described as follows:

"Baskin & Steingut, P.C., formerly known as Baskin & Sears, is a law firm with offices located in various cities throughout the United States. The firm provided tax advice and opinions to the Petrotec Entities and the Manhattan Partnerships syndicated in 1980. Based on the information currently available, plaintiffs are informed and believe and thereon allege that the firm's tax opinion appeared in the confidential memoranda for the following partnerships: Magnum Oil and Gas Associates, 1980; Magnum Oil and Gas Associates, 1980–II; Technology Oil and Gas Associates, 1980; Technology Oil and Gas Associates, 1980–II; White Rim Oil and

Gas Associates, 1980; While Rim Oil and Gas Associates, 1980–II; Winchester Oil and Gas Associates, 1980; Boulder Oil and Gas Associates, 1980; Canyon Oil and Gas Associates, 1980; Durango Oil and Gas Associates, 1980; Powell Oil and Gas Associates, 1980; and Remingtom Oil & Gas Associates, 1980."

In the course of their discovery plaintiffs served Baskin & Steingut with requests for production of documents. In response to these requests the Manhattan Partnerships, the general partners and Baskin & Steingut asserted attorney/client privilege and work-product privilege as to hundreds of documents in its files. After extensive meeting and confering Baskin & Steingut provided plaintiffs with additional documents which had initially been claimed to have been privileged. Ultimately, there remain 266 documents which Baskin & Steingut refused to turn over to plaintiffs, in addition to Baskin & Steingut's time, cost and billing records which it likewise refused to provide to plaintiffs.

Presently there are pending against Baskin & Steingut claims based upon section 10(b) and pendent claims for professional negligence, negligent misrepresentation and fraud. Plaintiffs' claim of conspiracy to violate section 10(b) was dismissed as to Baskin & Steingut without prejudice to being restated at a later date.

As to the Manhattan Partnerships, there are pending a claim of conspiracy to violate section 10(b) and two pendent claims for fraud and conspiracy.

As to Richard Basile, there are pending claims of primary liability under section 10(b), conspiracy to violate section 10(b), and section 20(a) of the 1934 Act and pendent claims for common law fraud and conspiracy.

None of the named plaintiffs invested in any of the Manhattan Partnerships save and except for plaintiff, Bell, who invested in Boulder.

The Special Master at this point has read, in camera, all of the 266 documents which are claimed to be privileged, some of which exceed fifty (50) pages in length. The Special Master has also reviewed, in camera, Baskin & Steingut's time, cost and billing records. Additionally, the Special Master has received and read a total of 421 pages of memoranda, declarations and exhibits in support of and in opposition to plaintiffs' motion to compel production of documents.[1] After digesting this vast mass of documents and legal argument the Special Master is now prepared to make his recommendations regarding the pending motion.

## II  ISSUES RAISED BY THIS MOTION

1. What law of privilege should be applied in deciding this motion, federal common law or the law of California or both?

2. Who are Baskin & Steingut's clients for purposes of attorney/client privilege?

3. If the limited partner plaintiffs are determined to be Baskin & Steingut's clients, can plaintiff, Bell, who has been certified as one of the named class plaintiffs be considered the holder of the attorney/client privilege with respect to those limited partnerships which were represented by Baskin & Steingut in which he did not invest?

4. Can an attorney assert work-product privilege against his own client who demands to review his entire file?

5. Can the fraud exception to attorney/client privilege be applied to this case at this time?

6. Are Baskin & Steingut's time, cost and billing records privileged and if so, to what extent?

7. Did Baskin & Steingut wilfully violate the Special Master's prior order with respect to producing certain time, cost and billing records?

## III  WHAT LAW OF PRIVILEGE SHOULD BE APPLIED TO THIS MOTION?

■ In their briefing of the motion respective counsel found themselves in a di-

---

1. The parties appearing and arguing this motion are plaintiffs, defendants (sometimes referred to as respondents), Baskin & Steingut, the Manhattan Partnerships, and Richard Basile.

lemma. The application of federal common law might be beneficial to the moving parties with respect to portions of their motion and detrimental with respect to other portions. The same proposition, of course, applies equally to respondents. In view of this situation there is considerable inconsistency in the parties' briefs on this subject. However, all parties to this motion appear to be in agreement that if any state law be applied, it would be the law of the forum state, California. No one has argued for the application of any other state's law of privilege.[2]

Initially, it must be noted that this is not simply a federal question case nor is it a diversity case. As can be seen from the introductory section, it is a federal question case with pendent state claims.

For sometime prior to the enactment of the Federal Rules of Evidence in July 1975 the Ninth Circuit applied the forum state's law in determining issues of privilege in both diversity cases and federal question cases. *Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960). The *Baird* court also noted that if any federal common law existed on the subject of privilege, it did not require federal courts to ignore the forum state's law. *Id.* at 632.

However, shortly prior to the enactment of the Federal Rules of Evidence a decision of the Ninth Circuit held that *Baird* had not stated a general rule that federal courts would always determine the extent and scope of privileges by reference to state law and that "in federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege". *Heathman v. U.S. District Court*, 503 F.2d 1032, 1034 (9th Cir.1974).

*Heathman* was cited with approval in *Lewis v. United States*, 517 F.2d 236, 237 (9th Cir.1975). The *Lewis* court also stated:

> In determining the federal law of privilege in a federal question case, absent a controlling statute, a federal court may consider state privilege law. (citations omitted) But the rule ultimately adopted, whatever its substance, is not state law but federal common law.

Further, *Lewis* made clear that "state privilege law is binding in federal civil proceedings in which state law provides the rule of decision" both in terms of prior decisional law and the then recently enacted Rule 501 of the Federal Rules of Evidence.[3] *Id.* at 237 n. 2.

Finally, *Lewis* stated that:

> The legislative history of Rule 501 of the Federal Rules of Evidence makes it clear that Congress intended that the courts should continue to develope the federal common law of privilege on a case-by-case basis.

*Id.* at 238 n. 4.

However, two years later the Ninth Circuit, with no reference to either *Heathman* or *Lewis*, referred back to *Baird* and stated:

> Before the effective date of the Federal Rules of Evidence, this circuit applied the law of the state in which the attorney-client relationship arose to determine

---

**2.** Very belatedly counsel for Baskin & Steingut discovered a case decided in the Southern District of New York which they believe is of assistance to their position as argued in this motion. The cover letter which forwarded a copy of that case to the Special Master states that perhaps the law of New York should govern this motion. Baskin & Steingut's counsel has not briefed this issue and has argued California law in its briefs for over six months. Under these circumstances the state law which will be considered will continue to be that of California, the forum state.

**3.** Section 501 reads as follows:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

whether or not a communication was privileged.

*Hodge and Zweig* 548 F.2d 1347 (9th Cir. 1977).

In *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 910–11, 63 L.Ed.2d 186 (1980) the United States Supreme Court held:

The Federal Rules of Evidence acknowledge the authority of the federal courts to continue the evolutionary development of testimonial privileges in federal criminal trials 'governed by the principles of the common law as they may be interpreted ... in the light of reason and experience.' (citations omitted) The general mandate of Rule 501 was substituted by the Congress for a set of privilege rules drafted by the Judicial Conference Advisory Committee on Rules of Evidence and approved by the Judicial Conference of the United States and by this Court. That proposal defined nine specific privileges, including a husband-wife privilege which would have codified the *Hawkins* rule and eliminated the privilege for confidential marital communications. *See* proposed Fed.Rule Evid. 505. In rejecting the proposed Rules and enacting Rule 501, Congress manifested an affirmative intention not to freeze the law of privilege. Its purpose rather was to 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis,' 120 Cong.Rec. 40891 (1974) (statement of Rep. Hungate), and to leave the door open to change. (citations omitted)

Therefore, *Trammel* instructs us that claims of privilege "must be judged in accordance with Rule 501 of the Federal Rules of Evidence, which leaves questions of privilege to case-by-case adjudication 'in the light of reason and experience'." *Zaustinsky v. University of California* 96 F.R.D. 622 (N.D.Cal 1983), *aff'd Zaustinsky v. University of California* 782 F.2d 1055 (9th Cir.1985).

The parties have cited no decision of the Ninth Circuit which clearly states whether federal common law or the law of the forum State controls in a federal question case with pendent state claims. While there appears to be no decision of the Ninth Circuit on point, at least two courts in this Circuit have addressed this issue.

In *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 458 (1978 N.D.Cal) the court stated:

As a threshold matter, the Court had to decide whether to apply the federal common law of privileges or the California law of privileges....

....

If this were a pure federal question case, then under Rule 501 the federal common law of privileges would have applied. Conversely, if this were a diversity case in which only state claims were raised, state law would have governed. (cites) Here, however, both federal and state claims are raised, and the information sought from Nielsen apparently goes to both federal and state claims....

....

The Court therefore had to apply either federal or California law with respect to the issues presented. Counsel has cited and independent research has disclosed no decision addressing the choice of law question in a case involving both federal and state claims after the enactment of Rule 501....

In conclusion it was held:

In the absence of any indication as to legislative intent in the language or legislative history of Rule 501, the Court believes that in federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation.

*Id.* at 459.

Four years later in *Los Angeles Memorial Coliseum Com'n v. N.F.L.,* 89 F.R.D. 489, 491–92 (1981 C.D.Cal), *cert. denied, Oakland–Alameda County Coliseum, Inc. v. Oakland Raiders, Ltd.,* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984) another court stated the following:

While the primary underlying claims in this case are based on federal antitrust law, plaintiffs have also included in their

current complaints business tort claims based on state law....

Thus, under Rule 501, when a civil action in federal court contains a combination of federal and state claims or defenses, federal courts should evaluate claims of privilege under both state and federal law. Moreover, even in cases in which all claims are based exclusively on federal law, federal courts, in 'moulding federal privileges under the common law development approach of Rule 501,' have traditionally sought guidance from existing state law.

At least one Circuit Court has addressed this issue.

We hold that when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule. The question is one of first impression in this court, but our holding is consistent with the legislative history of Rule 501 and the decisions of a number of trial courts. It is also consistent with the general rule in federal practice disfavoring privileges not constitutionally based. (citations omitted) Our holding does not, of course, preclude resort to state law analogies for the development of a federal common law of privileges in instances where the federal rule is unsettled.

*Wm. T. Thompson Co. v. General Nutrition Corp.* 671 F.2d 100, 104 (3d Cir.1982).

As will be seen below the resolution of the issues involved in this motion will not require a choice between conflicting state and federal rules dealing with attorney/client and work-product privilege. Based upon the foregoing authorities the Special Master will apply the federal common law to the extent it exists with respect to the issues in question. To the extent that no federal common law exists as to such an issue, the Special Master will look to the law of the State of California. To the extent that no federal or California authority exists as to a particular issue, the Special Master will follow the broad guidelines provided by the Supreme Court in *Trammel supra* and make his recommen-dations regarding the issue "in the light of reason and experience".

## IV  WHO ARE BASKIN & STEINGUT'S CLIENTS FOR PURPOSES OF ATTORNEY/CLIENT PRIVILEGE?

■ In their briefs Respondents argue that for purposes of attorney/client privilege Baskin & Steingut's clients are the promoter/general partners of the subject limited partnerships, GEDCO and Richard Basile. In their initial memorandum plaintiffs argued by analogy that certain federal cases dealing with corporations and their shareholders should govern the outcome of this question. In response to that argument the Manhattan Partnerships argued that decisions dealing with corporations "have no application to limited partners in a partnership context". The Special Master agrees with this latter assertion.

In their initial briefing none of the parties to this motion cited any authority on the issue of the relationship between an attorney for a limited partnership and the promoter/general partner vis-a-vis the limited partner/investors. At that time all parties stated that their research had disclosed no federal authority whatsoever on this subject. At the time of oral argument the Special Master informed the parties of pertinent California authority on this subject, *McCain v. Phoenix Resources, Inc.*, 185 Cal.App.3d 575, 230 Cal.Rptr. 25 (1986) and requested further briefing from the parties. In subsequent briefing plaintiffs, who had previously argued that the Special Master should look only to federal law on the subject of privilege reversed field and embraced the holding of *McCain* with both hands. Respondents in turn attempted to distinguish *McCain* to the point of nothingness.

*McCain* is the first California case which, in the context of a discovery dispute, analyzed the relationship of a limited partner/investor to; (1) the promoter/general partners; and (2) to the attorney who represents the promoter/general partners and the partnership entity.

The holding in *McCain* is announced in simple and clear language in the very first paragraph of the opinion.

> We conclude that absent any restriction by statute or by the partnership agreement, a limited partner has the right to inspect all documents and papers affecting the partnership, including those held by the partnership's attorney.[4]

*Id.* at 577, 230 Cal.Rptr. 25.

The discovery dispute in *McCain* is in its essential aspects virtually identical with the dispute in this case.

> Defendant argued that the books and records to which plaintiffs were entitled were restricted to the accounting and financial records of the limited partnership, as well as legal documents such as contracts and minutes of limited partnership meetings. Plaintiffs defined their inspection rights more broadly and claimed a right to inspect "all correspondence, memoranda, legal documents, files and any other documents and written materials relating to [Valley Investors'] formation, operation and financial affairs."

*Id.* at 578, 230 Cal.Rptr. 25.

> The *McCain* court reasoned as follows: The common law recognizes that when persons execute a contract that has the legal effect of creating a partnership, they acquire rights and subject themselves to duties growing out of their fiduciary relationship. (citations omitted) One of the most important duties created is each partner's duty of full disclosure. "Partners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation [or] concealment ..." (citations omitted) A managing partner has a legal duty to disclose to copartners "matters affecting their business relationship." (citations omitted) Partners have a duty to make a full and fair disclosure of all matters substantially affecting the value of the partnership. (citations omitted) Because of their fiduciary relationship, the records sought by plaintiffs herein were not the private property of defendant, but were subject to the rights guaranteed to the other partners to have access to all information pertaining to partnership affairs.

*Id.* at 579, 230 Cal.Rptr. 25

> Defendant also resists disclosure of any information in the possession of the two law firms named as indispensable parties to this action. Defendant argues "the right of inspection applies only as against partners" and alleges there is "no authority that would support a right of inspection against a law firm or any other third party as an adjunct of [plaintiffs'] right of inspection...." A partnership can be a client of a law firm and a lawyer may transact business on behalf of the partnership. (citations omitted) Under such circumstances, it is foreseeable that a law firm would have information in its possession relating to partnership affairs. If, on the other hand, the law firm holds records which represent the purely private or personal interest of one of the partners, the attorney-client privilege can be asserted to resist pro-

---

4. The inspection provision of the Boulder limited partnership agreement provides as follows:

> Books of Account. The General Partners shall maintain complete, accurate and up-to-date books for the Partnership business. Such books shall at all times be maintained at the office of the General Partners or such other office as may be designated for such purpose by the General Partners upon notice to all other Partners. All Partners shall have the right to examine such books at such location during normal business hours upon reasonable notice to the General Partners.

Respondents, without the benefit of any authority, vigorously argue that the above provision permits the limited partners to inspect only the partnership "books of account" and not all of its "books and records". Without the benefit of any authority plaintiffs assert that it means all "books and records".

Irrespective of this dictum in *McCain* regarding restrictions in the partnership agreement, any effort at putting a contractual limitation on a limited partner's right of inspection would most likely fail as it runs counter to the fiduciary obligations of disclosure as more fully described herein.

duction of these records. It will be the task of the trial court to determine to what extent the attorney-client privilege applies to the documents sought by plaintiffs herein, *but the attorney-client privilege will not bar disclosure of matters related to a partnership business simply because such business was conducted through a law firm."* [5] (emphasis added.)

*Id.* at 580–81, 230 Cal.Rptr. 25.

Respondents argue that *McCain* should not be followed in this case because its result depends upon provisions of the California Corporations Code which governed the limited partnership in that case and that the limited partnerships in this case are not California limited partnerships. While the *McCain* court referred to the California Corporations Code in its opinion it can be seen from the portions of *McCain* cited above that the court's determination was based primarily upon long standing principles of common law, particularly in the area of fiduciary obligations between partners.

*McCain* has been cited with approval in *Wortham & Van Liew v. Superior Court,* 188 Cal.App.3d 927, 233 Cal.Rptr. 725 (1987). The *Wortham* court stated:

> In the context of the representation of a partnership, the attorney for the partnership represents all the partners as to matters of partnership business. Further, partners owe to one another, and general partners owe to limited partners, obligations of good faith, fair dealing. All partners are entitled to access to a wide range of partnership information, whether or not that information is gener-

ated under the aegis of the partnership's attorney.[6]

*Id.* at 932, 233 Cal.Rptr. 725.

The reasoning and eminent fairness of the decisions in *McCain* and *Wortham* are compelling. Any failure to follow the reasoning in these decisions would, in effect, be a repudiation of a mass of authority in most, if not all, jurisdictions which have long held that partners have a fiduciary relationship and obligation to each other with respect to partnership affairs.

Moreover, Respondents have not argued that limited partners, as opposed to general partners, should be considered a subspecies of partners who are not entitled to the full protection of a fiduciary relationship with their general partner. Likewise, the court in *McCain* did not distinguish between the rights of general partners in a general partnership and limited partners in a limited partnership in this regard. Indeed, as limited partners ordinarily do not participate in the formation and operation of the partnership and are usually passive investors, they are far more likely to be dependent upon the promoter/general partner for information than would be a general partner in a general partnership.

The very essence of a fiduciary relationship in a business context is the entrustment of ones affairs, money or property to another. *Stevens v. Marco,* 147 Cal.App.2d 357, 305 P.2d 669 (1956).

As previously noted in footnote 2, counsel for Baskin & Steingut belatedly discovered a case which held that attorneys for a limited partnership were not attorneys for the limited partners and owed no duty to

---

5. As noted above, the Special Master has inspected, in camera, all of the disputed documents and none of these documents pertain to "purely private or personal interests" of the promoter/general partners.

6. The significance of the holding in *Wortham* has not gone unnoticed. The California Continuing Education of the Bar, in a very recent publication, advised the practicing bar as follows:

> Counsel for a limited partnership must be acutely aware of potential conflicts of interest between the general partner (whoever controls the partnership's business is often com-

pensated regardless of partnership profits, and may have made no significant capital contribution) and the limited partners (whose role is passive and whose return on investment depends on partnership profits). If a conflict arises, even such requirements as the attorney's duty to disclose information to the partners may pose issues that cannot easily be resolved. (citing *Wortham*) It is imperative that counsel properly identify the client and state clearly to all parties, in writing, the implications of the representation.

Continuing Education of the Bar, *Advising California Partnerships,* p. 241 (2d ed.1988).

them. *Quintel Corp., N.V. v. Citibank, N.A.* 589 F.Supp. 1235 (S.D.N.Y.1984). That court stated:

> Even if Conboy represented the limited partnership, its duty would run to the partnership, not to Quintel or his counsel. The New York Code of Professional Responsibility. Ethical Consideration 5–18 provides:
>
> "A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity."

*Id.* at 1240.

*Quintel* without any analysis whatsoever as to the nature of a limited partnership held that a limited partnership is an entity similar to a corporation and, therefore, will be treated like a corporation. In support of its holding *Quintel* cited cases which had held that attorneys for a corporation are not attorneys for the officers and directors of that corporation. But as respondents, themselves, acknowledge, limited partnerships are not corporations and cannot be treated as such. The reasoning in *Quintel* is so unpersuasive that it can not be considered determinative as to any issue in this case.

In view of the foregoing California authority and the absence of any compelling authority to the contrary, it must be concluded that the investor/limited partners in the various Manhattan Partnerships are also clients of Baskin & Steingut and are co-holders of the attorney/client privilege together with the promoter/general partners.

■ However, the above determination does not end our inquiry in this area. In this case, as would be the situation in most cases, Baskin & Steingut, as attorneys, represented the promoter/general partners in two contexts, as will be explained below.

In the typical situation the promoter has a business idea. He may or may not know what type of entity should be the vehicle for his future venture. If the venture is of any significant magnitude or complexity, he will most likely consult with legal counsel in order to obtain advice as to how to best proceed with his venture. At some point a determination may be made to use the vehicle of a limited partnership.

It is an obvious tautology that there is no limited partnership and there are no limited partners until the limited partnership is formed and persons invest as limited partners. Therefore, how does one interpret the above-quoted language from *Wortham*, "in the context of the representation of a limited partnership ..."?

Literally, one cannot represent an entity which has yet to be formed. Does this then mean that pursuant to *McCain* and *Wortham* a limited partner's right to inspect "all documents and papers affecting the partnership" is limited to only those documents and papers generated during the *operational stage* of the limited partnership and does not extend to those generated during the *formational stage* prior to the existence of the limited partnership? No court appears to have ventured into this thicket and provided us with its guidance.

Certainly, it is desirable that during the formational stage the attorney and promoter/client be able to communicate fully and without reservation with respect to all aspects of the future venture and without fear that these communications will be aired and perhaps used against them at a future date. This is the *raison d'etre* of attorney/client privilege. However, it is beyond dispute that during the formational stage the attorney and his promoter/client are dealing with matters which will directly impact future limited partners, to whom the law says they will both be fiduciaries.

Moreover,

> It is the settled law of this state, and elsewhere, that "[W]here there exists a relationship of trust and confidence it is the duty of one in whom the confidence is reposed to make full disclosure of all material facts within his knowledge relating to the transaction in question and any concealment of material facts is a fraud." (citations omitted)

*Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 67 Cal.App.3d 19, 32, 136 Cal. Rptr. 378 (1977).

In the situation before us the "transaction in question" must be deemed to be the entire continuum of activity which includes both the formational and operational stages. To hold otherwise would be to honor form over substance. The plans made and steps taken during the formational stage unquestionably and directly impact the subsequent operation of the partnership. To permit these documents to be withheld would make a mockery of the requirement of full disclosure in a fiduciary relationship.

There will be those who will claim this determination puts an unduly heavy burden upon promoters of limited partnerships and their attorneys. So be it. One who assumes a position of trust must be prepared to carry out its duties in the utmost of good faith. A fiduciary cannot have divided loyalties with respect to his fiduciary relationship. Baskin & Steingut as attorneys for both the promoter/general partners and for the limited partner/investors assumed a relationship with the potential for divided loyalties. This problem of divided loyalties of a fiduciary has been addressed in a California decision which dealt with a securities brokerage firm which had a fiduciary relationship to both a corporation on whose board of directors one of its partners sat and whose stock it traded, and its retail customers who purchased stock in that corporation.

> Appellants argue, however, that Dunbar cannot be held liable for nondisclosure to respondents because, as a director of US-AMCO, he had a fiduciary duty not to reveal information concerning the corporation without its authority. The essence of the argument is that, as between Dunbar's conflicting duties, the duty of confidentiality he owed to US-AMCO as a director was higher than the duty of disclosure he owed to Shearson's customers as their broker....
>
> ....
>
> However, we have been given no sufficient reason for permitting a person to avoid one fiduciary obligation by accepting another which conflicts with it.... The officer-director's conflict in duties is the classic problem encountered by one who serves two masters. It should not be resolved by weighing the conflicting duties; it should be avoid in advance ... or terminated when it appears.

*Black v. Shearson, Hammill & Co.* 266 Cal.App.2d 362, 367–68, 72 Cal.Rptr. 157 (1968).

The foregoing analysis leads to the inescapable conclusion that Baskin & Steingut should not be permitted to withhold documents generated during the formational stage of the limited partnership and that these documents are no more entitled to be shielded from discovery than are documents generated during the operational stage of the partnership.

V CAN PLAINTIFF, BELL, WHO HAS BEEN CERTIFIED AS ONE OF THE NAMED CLASS PLAINTIFFS BE CONSIDERED TO BE THE HOLDER OF THE ATTORNEY/CLIENT PRIVILEGE WITH RESPECT TO THOSE LIMITED PARTNERSHIPS WHICH WERE REPRESENTED BY BASKIN & STEINGUT IN WHICH HE DID NOT INVEST?

As noted above, plaintiffs Fifth Amended Complaint lists 18 separate limited partnerships [7] which constitute the Manhattan Partnerships which were represented by defendant, Baskin & Steingut. Of the named class plaintiffs, only Bell invested in any of the Manhattan Partnerships. Bell invested in Boulder. As noted previously,

---

7. Plaintiffs allege that there are 18 Manhattan Partnerships, yet documentation examined by the Special Master appears to encompass as many as 24 partnerships. Plaintiffs allege that Baskin & Steingut wrote tax opinions for only 11 of the Manhattan Partnerships. Yet during the Special Master's in camera review of documents it was apparent that Baskin & Steingut maintained client cost ledgers for services rendered for at least 24 separate limited partnerships. Perhaps some of the confusion is created by the fact that many of the partnership defendants had the same name with only a different year designation. In any event these discrepancies are not significant with respect to the resolution of any of the issues addressed in this order.

each of the 18 limited partnerships had the same general partners, GEDCO and Basile.

Also, as has been noted, this Court in its order of March 23, 1987 certified this case as a class action and permitted plaintiffs to go forward on theories, among others, of conspiracy and concerted action. In discussing the subject of typicality the Court stated:

> Under this third requirement of Rule 23(a), the named plaintiffs must present claims that are 'typical' of the class. Plaintiffs claim the typicality requirement is met because the named plaintiffs, like the other class members, were injured by purchasing the same unregistered securities pursuant to documents containing identical or substantially similar omissions and misrepresentations of material fact. Defendants claim that *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973) prevents the named plaintiffs from proceeding on behalf of plaintiffs who invested in partnerships in which the named plaintiffs did not invest. In *La Mar*, the Ninth Circuit held that when the representative plaintiff does not have a claim against all defendants, a class may not be certified for failure to meet, among others, the typicality requirement. *La Mar, supra,* 489 F.2d at 465. Because in this case the named plaintiffs invested in only four limited partnerships, and yet are attempting to represent class members who invested in 40 different partnerships, defendants claim a global class should not be certified. The court does not agree.
>
> In *La Mar*, the Ninth Circuit held that the typicality requirement is met even where the named plaintiffs did not deal directly with all defendants, provided a concerted scheme or conspiracy is alleged. *La Mar, supra,* 489 F.2d at 466. The court finds that plaintiffs' claims fall within each of the *La Mar* conspiracy and concerted scheme exceptions. First, in the pending motions to dismiss this court held that plaintiffs have made adequate conspiracy allegations as to certain defendants. These allegations bring this case squarely within the conspiracy ex-

ception. Second, as plaintiffs have adequately alleged that the same omissions and misrepresentations of material fact infected all the offerings, these allegations fall within the *La Mar* concerted scheme exception.

> As plaintiffs' claims fall within these *La Mar* exceptions, each plaintiff need not have a claim against each defendant in order to fulfill the typicality requirement. However, as was explained above, should plaintiff through discovery fail to establish the basis for the conspiracy or concerted scheme allegations, the court may be forced to decertify the class for failure to meet the typicality requirement.

*Roberts v. Heim,* 670 F.Supp. at 1490–91.

The Special Master invited the parties to specially brief the issue addressed in this section V. All parties concur that this is an issue of first impression and that there is no case authority directly on point.

Plaintiffs argue that the "application of Rule 23 Fed.R.Civ.P. and sound public policy considerations counsel that plaintiff, Bell, can properly act on behalf of all limited partners with respect to attorney/client privilege. Indeed, were Mr. Bell *not* permitted to challenge the assertion of the privilege here on behalf of all class members, it would eviscerate the very purpose of Rule 23 and completely undercut its utility as a device to streamline litigation in complex cases such as this where thousands of individuals and entities are similarly situated."

Additionally, plaintiffs argue that the portion of this Court's certification order regarding typicality, reiterated above, confirms that Bell "is properly situated to vindicate the interests of all class members, including gaining access to all relevant documents."

In support of the above general arguments plaintiffs cite *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 550–51, 94 S.Ct. 756, 764–65, 38 L.Ed.2d 713 (1974) which held:

> A federal class action is no longer 'an invitation to joinder' but a truly repre-

sentative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions. Under the circumstances of this case, where the District Court found that the named plaintiffs asserted claims that were 'typical of the claims or defenses of the class' and would 'fairly and adequately protect the interests of the class,' Rule 23(a)(3), (4), the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue ... To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid in those cases where a class action is found 'superior to other available methods for the fair and efficient adjudication of the controversy.' Rule 23(b)(3).

Plaintiffs contend that if Bell is not permitted to act on behalf of all the limited partner class members and obtain full discovery, the problem of multiplicity of suits which was recognized by *American Pipe* will occur and that the Courts would have to entertain a series of separate class actions with respect to each of the limited partnerships.

Defendants, in their briefs, approach the issue from a different prospective. Defendants argue that attorney/client privilege is the "most jealously guarded privilege in the law". Additionally, defendants note that it is the right of the client to assert the privilege and that the client is the holder of the privilege.

Defendants further argue that should plaintiffs' contentions on this issue be upheld, the class representative would become a client for purposes of attorney/client privilege when in fact he is not the client. Defendants also assert that adherence to plaintiffs' position would permit a total stranger to a partnership to assume the position of a client and in effect would allow such a stranger access to otherwise privileged and confidential communication.

In resolving this issue the starting point must be this Court's prior order certifying this case as a class action, with Bell being one of the named plaintiffs. The Court permitted Bell and the other named plaintiffs to proceed on behalf of the unnamed plaintiffs only after finding that the typicality requirement of Rule 23(a) had been met. The Court determined that although the named plaintiffs had only invested in four of the defendant limited partnerships, a global class should be certified. The Court based its ruling on *La Mar*, supra, which would permit plaintiffs such as Bell to represent unnamed plaintiffs who invested in limited partnerships in which the named plaintiffs did not invest.

The pertinent language in *La Mar* is as follows:

> ... we assert that a plaintiff who has no cause of action against the defendant can not 'fairly and adequately protect the interests' of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect. Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury. Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.

*La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 466 (9th Cir.1973).

Having carved out the conspiracy/concerted scheme exception, one must assume that the Court in *La Mar* anticipated that the representative plaintiffs would have an opportunity to conduct reasonable discovery to establish the alleged conspiracy or concerted scheme. Indeed, the last

paragraph of this Court's prior order which is quoted above makes clear that Bell and the other named plaintiffs were to be given such an opportunity. Discovery is especially important in cases involving an alleged conspiracy or concerted scheme as such activities are rarely carried out openly and in full view of those affected by them. If defendants were to prevail in their arguments, the *La Mar* exception would, in this case, be eviserated to the point of being meaningless.

As pointed out above, the Supreme Court in *American Pipe, supra* 414 U.S. at 550–51, 94 S.Ct. at 764–65 stated in clear terms that:

A federal class action is no longer 'an invitation to joinder' but truly a representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions.... the claimed members of the class stood as parties to the suit until and unless they received notice thereof and chose not to continue ...

Thus, we are instructed that Bell is a named plaintiff in a truly representative suit and that the unnamed plaintiffs are parties to the suit until they receive notice thereof and choose not to continue as such.

■ Defendants arguments as set forth in their briefs are correct in stating that the client is the holder of privilege, with respect to attorney/client privilege and has the right to assert such privilege, but ignore the fact that this is not an invariable rule. It is also the law that someone other than the actual client can become the holder of the privilege with respect to attorney/client privilege. For example, the Supreme Court has held that a trustee in a corporate bankruptcy becomes the holder of the privilege and may demand privileged documents from corporate counsel. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

Similarly California has determined by statute that someone other than the client may under certain circumstances become the holder of the privilege with respect to attorney/client privilege. See California Evidence Code section 953(b), (c), (d). The comments of the California Law Revision Commission with respect to this code section are particularly instructive. They state in part:

Under Section 953, however, the personal representative of a deceased client may waive the privilege. The purpose underlying the privilege—to provide a client with the assurance of confidentiality—does not require the recognition of the privilege when to do so is detrimental to his interest or to the interests of his estate.

■ At this point, after an in camera review of the subject documents, the Special Master has the advantage of knowing the substance of these disputed documents. Upon conducting this review several things became apparent.

First, some of the documents relate specifically to Boulder and, therefore, Bell would be one of the Boulder clients based upon the determination in section IV above.

Second, many of the documents refer in part to Boulder and in part to some or all of the other limited partnerships.

Third, a significant portion of Baskin & Steingut's services rendered on behalf of the Manhattan Partnerships was rendered for the benefit of all or many of the partnerships and was not strictly limited to one or another of the partnerships. In fact, there was much overlapping and to have so limited the representation would have been duplicative and inefficient.

Fourth, many of the documents refer to the "Basile Partnerships" or to the "partnerships" without any designation or limitation as to which partnership the reference is made.

Fifth, some documents do not refer to any partnership. For example, certain research was performed or letters written which on their face may be pertinent to all of the partnerships or some of them, including Boulder.

Sixth, in this case a joint venture existed known as the "GEDCO Heavy Oil Joint Venture". The joint venturers were 21

limited partnerships, one of which was Boulder. The joint venture agreement provided in part that each of the joint venturer/limited partnerships would contribute all of its heavy oil properties to the joint venture. Thereafter, these properties would be explored and developed "through the medium of a joint venture" as set forth in the joint venture agreement. Without disclosing further details of the joint venture agreement at this point suffice it to say that it appears that to a very significant extent the Manhattan Partnerships were operated as a single entity through the vehicle of a joint venture.

In view of the facts of this case each limited partnership cannot be viewed as an entity standing in isolation. In light of the foregoing authorities and facts it is clear that giving plaintiffs access to the subject documents will promote the beneficial effect of Rule 23 and carry forth the reasoning behind the conspiracy and concerted scheme exception announced in *La Mar*. Moreover, it also clear that the law, both federal and California, recognizes that there are situations where it is appropriate to permit someone other than the client to become the holder of the privilege with respect to the attorney/client privilege. Indeed, the comments of the California Law Revision Commission as set forth above are especially meaningful in this case. The law should not permit claims of privilege to stand when such claims in effect are detrimental to the very party (i.e. the client) whose interest the privilege is supposed to protect.

It is not forgotten that Baskin & Steingut's clients, the promoter/general partners and the investor/limited partners are defendants and plaintiffs respectively in this case and that the promoter/general partners certainly believe that it is not in their best interests that the subject documents be disclosed. However, in view of their fiduciary obligations to the investor/limited partners as previously described above, they may not be heard to object in this manner.

In conclusion, it is the Special Master's recommendation that under the facts and circumstances of this case plaintiff, Bell, should be considered to be a holder of the attorney/client privilege with respect to the Manhattan Partnerships in which he did not invest. This is essential in order that he be able to fully assert the claims of the unnamed plaintiffs in this case, and as the holder of that privilege, have the right to inspect those documents generated with respect to the limited partnerships in which he did not invest which have been withheld on the grounds of attorney/client privilege.

## VI CAN AN ATTORNEY ASSERT WORK PRODUCT PRIVILEGE AGAINST HIS OWN CLIENT WHO DEMANDS TO REVIEW HIS ENTIRE FILE?

■ The foregoing portion of this order deals with claims of attorney/client privilege asserted by the defendant, Manhattan Partnerships, and their general partners. However, Baskin & Steingut has also asserted that many of the subject documents are privileged as its work product.

Federal Rule of Civil Procedure 26(b)(3) provides in pertinent part:

> Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The parties to this motion acknowledge that other than an opinion of the Fifth

Circuit which was brought to their attention by the Special Master, they have found no other federal case which has addressed this question.

When confronted with this question, the Fifth Circuit dealt with it in summary fashion.

> Schloth's contention that the requested materials were protected work product is without merit. The work product doctrine pertains to materials prepared by an attorney in preparation for litigation when the materials are sought by an adversary of the attorney's client. Fed. R.Civ.P. 26(b)(3) speaks of 'documents and tangible things ... prepared in anticipation of litigation or for trial by or for *another* party or by or for that *other* party's representative....' (emphasis added). Thus, the work product doctrine does not apply to the situation in which a client seeks access to documents or other tangible things created or amassed by his attorney during the course of the representation.

*Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir.1982), *cert. denied, Spivey v. Georgia*, 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809 (1985).

The reasoning of the *Spivey* court is apparent and speaks for itself. Plaintiffs counsel, of course, embrace the holding of *Spivey* and, as competent advocates, say no more. Defendants, on the other hand, seem to acknowledge that *Spivey* is correct, but assert that as the named plaintiffs were not Baskin & Steingut's clients, work-product privilege can be asserted against them. The prior portions of this recommendation have already determined that investor/limited partners are the clients of the attorneys representing the promoter/general partners and the partnership. Additionally, it has also been determined that plaintiff, Bell, as a representative plaintiff, is, in terms of attorney/client privilege, the client of Baskin & Steingut with respect to all the Manhattan Partnerships.

At a minimum, Bell, as a limited partner in Boulder, would, under the holding in *Spivey*, be entitled to the Boulder doc-uments to which Baskin & Steingut assert work-product privilege. This determination, however, does not resolve the issue as to the documents generated by Baskin & Steingut with respect to the other Manhattan Partnerships to which they assert work-product privilege.

For purposes of this motion the parties agree that the holder of the attorney/client privilege is the client, subject to certain exceptions set forth in section V above, and that holder of the work-product privilege is the attorney. Does this then mean that for purposes of deciding this issue of work-product privilege Bell should likewise be considered a client of Baskin & Steingut as to the other Manhattan Partnerships?

Attorney/client privilege and work-product privilege are separate and distinct privileges with separate histories and rationale behind them. However, in the circumstances of this case it is difficult to see why the reasoning set forth in section V above which permits Bell to be the client as to those Manhattan Partnerships in which he did not invest, for purposes of attorney/client privilege, should not likewise consider him the client with respect to Baskin & Steingut's assertion of work-product privilege. It would be inconsistent to hold that Bell, as a representative plaintiff, should be able to protect the interests of unnamed plaintiffs in terms of obtaining documents which would otherwise be denied him by the assertion of attorney/client privilege, and to then hold that he cannot protect these same interests as to documents withheld pursuant to work-product privilege. Furthermore, no public policy considerations have been articulated by defendants which would support an assertion of work-product privilege by any attorney to the detriment of his client.

Defendants, confronted with the holding of *Spivey, supra*, again shift positions and argue that under the California law of work-product privilege plaintiffs would, at a minimum, be denied large portions of the subject documents. This assertion is highly problematic.

With respect to attorney/client privilege there is no question that in a case in which

a client sues his attorney that privilege disappears. California Evidence Code § 958 provides:

> There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship.

There is no California statute creating a similar exception with respect to work-product privilege. California Code of Civil Procedure § 2018 provides:

> Attorneys' work products
>
> (a) It is the policy of the state to: (1) preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases; and (2) to prevent attorneys from taking undue advantage of their adversary's industry and efforts.
>
> (b) Subject to subdivision (c), the work product of an attorney is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice.
>
> (c) Any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.
>
> (d) This section is intended to be a restatement of existing law relating to protection of work product. It is not intended to expand or reduce the extent to which work product is discoverable under existing law in any action.[8]

Under old Code of Civil Procedure section 2016(b) or the new Code of Civil Procedure section 2018(c) California had, and continues to have, what has been termed an "absolute" privilege as to such writings.

> A document from Attorney Kottler's file comes within the 'absolute' portion of the attorney's work-product privilege if it consists of a 'writing that reflects an attorney's impressions, conclusions, opinions or legal research or theories.' (citations omitted) Such a writing 'shall not be discoverable under *any* circumstances.' (Ibid., italics added.) The language of section 2016, subdivision (b), is clear and explicit. It offers no opportunity for compromise or variation. There is no authorization for the court to weigh or balance any competing interests between the party seeking disclosure and the party resisting disclosure. Invocation of the attorney's work-product privilege with respect to such a document precludes discovery since such a document 'is protected absolutely from any disclosure by the attorney's work-product privilege....' (citations omitted)

*Fellows v. Superior Court,* 108 Cal.App.3d 55, 68, 166 Cal.Rptr. 274 (1980).

In the subsequent case of *Travelers Ins. Companies v. Superior Court,* 143 Cal. App.3d 436, 453, 191 Cal.Rptr. 871 (1983) it was stated:

> We are aware of no precedent allowing even the former client of an attorney access to writings that reflect that attorney's 'impressions, conclusions, opinions, or legal research or theories.'

Several years later another panel of the California Court of Appeal was not so confident that "absolute" meant absolute in all circumstances. It was noted:

> The consideration of apparent legislative intent is perhaps even more appropriate in the present case. The Legislature ex-

---

8. The effective date of the Section 2018 is July 1, 1987. Its predecessor, Code of Civil Procedure section 2016(b) and (h) provided in pertinent part:

> The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances.
>
> Policy. It is the policy of this state (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts.

pressly enacted an exception to the attorney-client privilege where the subject confidential attorney-client communication is sought in actions arising from a claim of breach of duty between client and attorney. (citations omitted) However, the Legislature did not create a similar exception to the work product privilege with regard to such actions between the client and the attorney. Yet, the discovery and use of the attorney's uncommunicated work product would be at least as material to determination of an attorney-client dispute (particularly legal malpractice) as would discovery and use of confidential communications. This absence of a parallel exception, together with the absolute language of the work-product privilege in section 2016, subdivision (b), supports the construction that "absolute" work product is "not subject to discovery under any circumstances."

*Lasky, Haas, Cohler & Munter v. Superior Court,* 172 Cal.App.3d 264, 273–74, 218 Cal.Rptr. 205 (1985).

The Court then footnoted the foregoing statement as follows:

> The question of whether the public policy consideration of achieving justice in the context of an actual legal malpractice action might be held to mandate an exception to the 'absolute' privilege need not be reached by this court. In the underlying action, the work product is sought by litigation adversaries of the client. There is no suggestion that the trustee, acting in his own interests in defending the underlying removal and surcharge proceedings, desire the disclosure of the materials sought by the beneficiaries. This case does not present the same strong public policy considerations for creation of an exception as would discovery efforts by the client for the purpose of facilitating preparation of his own malpractice action against his former attorney. Also, the privilege's guarantee of protecting the attorney from compelled disclosure to future adversaries of his client is served in the present circumstances, while it would not

be so served in an action exclusively between client and attorney.

*Id.* at 274 n. 4, 218 Cal.Rptr. 205.

Later in its opinion the *Lasky* court reiterated its concern that there are strong public policy considerations for permitting a client access to all of his attorney's files when a client is suing his own attorney.

> There are strong ethical public policy considerations for concluding that the client has an absolute right of access to all work product generated by his attorney in representing the client's interests. In the absence, however, of any statutory exception parallel to that created by Evidence Code section 958 relative to the attorney-client privilege, we are compelled by the absolute language of section 2016, subdivision (b), and the express statement of purpose in subdivision (h), to conclude that the attorney is the intended exclusive holder of the work product privilege and that it may be asserted even against his client in the context of litigation where adversaries of the client seek discovery for use against the client.

> We reemphasize the narrowness of this holding and repeat that we do not consider the far stronger public policy considerations involved in discovery where the client seeks his former attorney's work product to prepare his own case against that attorney.

*Id.* at 279, 218 Cal.Rptr. 205.

In drafting the new Code of Civil Procedure section 2018 the California legislature did not address this conflict between the "strong ethical public policy considerations" found by the *Lasky* court and the "absolute" privilege as to "any writing that reflects an attorney's impressions, conclusions, opinions or legal research or theories".

Most recently, another panel of the California Court of Appeal reiterated the above quoted language from page 279 of *Lasky*, 218 Cal.Rptr. 205, with approval but gave no indication of how it would resolve this conflict if it were presented to it. *BP*

*Alaska Exploration, Inc. v. Superior Court,* 199 Cal.App.3d 1240, 1260, 245 Cal. Rptr. 682 (1988).[9]

However, in a different context it has been held:

> Rule 2–111(A)(2) of the California Rules of Professional Conduct provides: 'In any event, a member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.' It is settled that rules relating to the withdrawal of an attorney from employment 'apply with no less force to the discharge of an attorney. His duty to his client is not altered by the circumstances of who terminates the relationship.' (citations omitted) It is a breach of the duty imposed by rule 2–111(A)(2) to retain a client's case files after discharge (citations omitted), *in that an attorney's work product belongs absolutely to the client* whether or not the attorney has been paid for his services (citations omitted) or to fail to forward the client's files to a successor attorney. (citations omitted) (emphasis added.)

*Kallen v. Delug* 157 Cal.App.3d 940, 950, 203 Cal.Rptr. 879 (1984). The *Kallen* court did not make its ruling in the context of a claim of work-product privilege, but in the context of a client demanding his file upon the discharge of his attorney. This was duly noted by the *Lasky* court which found that the *Kallen* decision was not controlling authority on the issue of privilege.

> The line of cases relied upon by the beneficiaries for the contrary conclusion (citations omitted) do not address an assertion of the work product privilege in the discovery context. Rather, they concern the ethical duty of a discharged or withdrawing attorney to provide the former client with the litigation case file upon request so that new counsel could prepare the case for trial against the client's adversaries.
>
> These cases do not analyze the question of the validity of the privilege as between attorney and client, nor do the facts of these cases require determination of whether the attorney is precluded from asserting the privilege *when persons other than the client* seek to obtain discovery indirectly by forcing the client to obtain the work product from his attorney. (emphasis added.)

*Lasky,* 172 Cal.App.3d at 275, 218 Cal.Rptr. 205.

Finally, another panel of the California Court of Appeal has recently reaffirmed *Kallen* and has held:

> The law is clear that "an attorney's work product belongs absolutely to the client."

*Matull & Associates v. Cloutier,* 194 Cal. App.3d 1049, 1056, 240 Cal.Rptr. 211 (1987)

The above recitation of California authority is most unsatisfying. California now has two "absolutes" which appear to be in irreconcilable conflict with each other. The first "absolute" pertains to the attorney work-product privilege with respect to his impressions, conclusions, opinions, or legal research or theories. The second "absolute" is the client's right to the attorney's work product when he demands his files from his attorney.

It is difficult, if not impossible, to see how providing a client with his attorney's work product, which has been created by his attorney and for his benefit and not that of the attorney, would in any way run afoul of the public policy in favor of work-product privilege as announced by the California legislature in Code of Civil Procedure section 2018(a). In any event, nothing

---

**9.** The *BP Alaska* case decided by a divided court. The issue that divided that court was whether an attorney's opinion letter or memorandum to a client loses its absolute work-product status once the letter or memorandum is delivered in confidence to the client. Portions of the law dealing with work-product privilege are suffi-ciently unclear in California after numerous decisions on the subject that the dissenting Judge was moved to claim that the result arrived at by the majority "border[ed] upon the absurd".

*BP Alaska,* 199 Cal.App.3d at 1276, 245 Cal. Rptr. 682.

in the foregoing recitation of California authority would compel defendants' conclusion that a California court would decide the issue addressed in this section any differently than did the Fifth Circuit in *Spivey*, assuming, *arguendo* that California law need be considered in view of the federal common law announced by *Spivey*. Moreover, in referring to Rule 26(b) it has been said:

> The work product doctrine, which is reflected in this Rule, is, like other privilege rules, to be narrowly construed because its application can derogate from the search for the truth. The party seeking to invoke the work product doctrine bears the burden of establishing all the elements that trigger the protection; doubts must be resolved against the party asserting the privilege.

*U.S. v. 22.80 Acres of Land,* 107 F.R.D. 20 (N.D.Cal 1985).

> Most recently Ninth Circuit reiterated: Applying "reason and experience," federal courts construe evidentiary privileges narrowly.

*U.S. v. Roberson* 859 F.2d 1376, 1378 (9th Cir.1988).

It is the recommendation of the Special Master that Baskin & Steingut's assertion of work-product privilege not be permitted to prevail over the demand for the subject documents by the named plaintiffs in this case.[10]

## VII  CAN THE FRAUD EXCEPTION TO THE ATTORNEY/CLIENT PRIVILEGE BE APPLIED TO THIS CASE AT THIS TIME?

Plaintiffs urge that any claims of attorney/client privilege should be rejected because the fraud exception to the privilege applies. In view of the determination made in the preceding sections the Special Mas-

ter need not consider this argument at this time as it has already been determined that plaintiffs are entitled to the subject documents irrespective of this exception. Nevertheless, several additional points should be made at this time.

The parties concur that under the federal law of attorney/client privilege plaintiffs must first make a *prima facie* showing that the subject legal advice was obtained in furtherance of illegal or fraudulent activity. *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1932). California is in accord with respect to this *prima facie* showing requirement. *See BP Alaska supra* 199 Cal.App.3d at 1262, 245 Cal.Rptr. 682.

While neither plaintiffs nor defendants address the issue, federal authority holds that the fraud exception applies to work-product privilege as well as attorney/client privilege.[11] *In re Sealed Case* 676 F.2d 793, 812 (DC Cir.1982); *Re Doe* 662 F.2d 1073, 1078–80 (4th Cir.1981) *cert. denied* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982); *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir.1979)

Plaintiffs assert that sufficient evidence has already been adduced in this case to make the necessary *prima facie* showing to invoke the fraud exception. Plaintiffs merely incorporate by reference their submissions to an unsuccessful motion brought by the Manhattan Partnerships to decertify the class in this case.

Considering the serious ramifications of a finding of a *prima facie* case of fraud on the part of the respondents to this motion, the Special Master would require special briefing and perhaps a hearing on this particular issue before making such a finding. However, as pointed out above, the previ-

---

**10.** Plaintiffs also argue in their briefs that there are other significant reasons for denying Baskin & Steingut's claim of work-product privilege. For example, plaintiffs vigorously assert that due diligence documents are not entitled to work-product protection, that work-product privilege has been waived with respect to numerous documents, that many of the subject documents were not prepared in anticipation of litigation or for trial, and so forth. In view of

the determination that an attorney cannot assert work-product privilege against his own client, it is not necessary to reach these issues.

**11.** In *BP Alaska, supra,* it was held that the crime/fraud exception of California Evidence Code § 956 applies only to attorney/client privilege, but not to work-product privilege.

ous determination in sections III through V above render this issue moot at this time.

## VIII ARE BASKIN & STEINGUT'S TIME, COST AND BILLING RECORDS ("TCB") PRIVILEGED, AND IF SO, TO WHAT EXTENT?

■ As is the case in section V above, the Special Master's determination in sections III through VI above render this issue moot. To the extent that plaintiffs are Baskin & Steingut's clients, Baskin & Steingut would not be able to assert attorney/client or work-product privilege as to their TCB. Nevertheless, certain observations should be made regarding their TCB as they will clarify the determination of the Special Master in section IX below. As previously noted, the Special Master has inspected, in camera, Baskin & Steingut's TCB for the Manhattan Partnerships and is aware of their format and contents.

Plaintiffs argue that Baskin & Steingut's TCB can be privileged only if they contain the "substance of any opinion or advice conveyed". Plaintiffs cite no authority which specifically states this proposition.

In response Baskin & Steingut claim that its TCB "are uniquely detailed" and are "in the nature of a report to the client, advising them [sic] of all activity on various partnership files that had occurred over the billing period." Therefore, claim Baskin & Steingut the TCB are privileged. The Manhattan Partnerships concur in these claims of privilege. Neither Baskin & Steingut nor the Manhattan Partnerships cite any authority in support of their respective positions on this subject.

The Ninth Circuit has, to some extent, addressed this issue.

> The purpose of the attorney-client privilege is to protect every person's right to confide in counsel free from apprehension of disclosure of confidential communications. (citations omitted) Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating.
>
> Nothing in the circumstances of this case suggests that disclosure of the amounts and dates of payments of fees by appellant to his attorney would in any way convey the substance of confidential professional communications between appellant and his attorney. Accordingly, in this case this information is not protected by the attorney-client privilege.

*In Re Osterhoudt*, 722 F.2d 591, 593, 594 (9th Cir.1983).

The implication of the language used by the Court in *Osterhoudt* is that any information contained in Baskin & Steingut's TCB which in any way conveys the substance of confidential professional communications between a client and his attorney would be privileged. *See also Tornay v. United States* 840 F.2d 1424, 1426 (9th Cir.1988).[12]

Whether such confidential professional communications exist can only be determined in this case by a review of the specific language used in each entry on each document as will be made clearer below.

The in camera inspection of Baskin & Steingut's TCB revealed several things. In particular, Baskin & Steingut's claims that their TCB are "uniquely detailed" is somewhat specious upon closer examination of the documents themselves. These documents fall into several categories as to each of the Manhattan Partnerships.

The first category of documents are what Baskin & Steingut term "client case ledgers". Indeed they are just that, ledgers. These ledgers show the name of the client, dates, costs, fees, payments on the account and month-end or year-to-date totals. These ledgers do not contain the substance of any activity, opinions, advice, impressions, etc. of Baskin & Steingut. The only discriptive items in these ledgers are cryptic references to items of cost and appear for example as "telephone," "xerox,"

---

**12.** California appears to have a similar view. See *Willis v. Superior Court,* 112 Cal.App.3d 277, 291, 169 Cal.Rptr. 301 (1980).

"courier," "messenger," "Federal Express," "taxi service," "telecopier," and "postage." It is the opinion of the Special Master that such references are not unique to Baskin & Steingut and convey nothing that any reasonable person would deem to be of substance. The activities of counsel are even more cryptically noted with the designation of "fees". In short, nothing in the client case ledgers appears to warrant privilege protection.

The second category of documents are what Baskin & Steingut term "time detail". As one might expect, these documents break down the time incurred by Baskin & Steingut on behalf of its client. They list a file number, the client's name, the amount of time spent and the dates the services were rendered. They also have a column describing Baskin & Steingut's activities.

This discriptive column often contains abbreviations which are not readily identifiable by the Special Master. They usually contain five or less words to describe the subject activity. However, it is possible that in the context of this vast and complex case some of these brief descriptions could constitute a communication of substance and might be privileged. Without further explanation from the defendants as to those specific descriptive items they believe are of a privileged nature it would be impossible for the Special Master to make this determination on a blanket basis as to the thousands of separate entries of this nature.

The third category are bills sent to the client for fees and out-of-pocket disbursements. These bills have a face sheet which shows in summary form totals taken from ledgers which are often attached. Like the second category above, testimony would have to be taken as to what portion of these bills defendants believed are privileged.

The final category is miscellaneous correspondence between Baskin & Steingut and Basile or his agents regarding the billings. For the most part this correspondence has to do with requests for clarification or correction, but likewise it is possible that some

portion of these communications could contain potentially privileged matter.

It is the Special Master's conclusion that irrespective of whether plaintiffs are Baskin & Steingut's clients as determined in prior portions of this recommendation the great bulk of Baskin & Steingut's TCB are not privileged, but may contain some items would could possibly constitute privileged matter. To the extent that such items appear, they could easily be redacted from copies given to the plaintiffs.

IX DID BASKIN & STEINGUT WILFULLY VIOLATE THE SPECIAL MASTER'S PRIOR ORDER WITH RESPECT TO PRODUCING CERTAIN TIME, COST AND BILLING RECORDS?

On June 1, 1987 plaintiffs served a request for production of documents on Baskin & Steingut which requested among other items Baskin & Steingut's TCB. On July 2, 1987 Baskin & Steingut responded to this request by asserting that the TCB were privileged.

Plaintiffs subsequently brought a motion to compel the production of certain documents which were being withheld by the defendants, including Baskin & Steingut's TCB. Considerable argument was heard from counsel for the respective parties on the subject of the production of Baskin & Steingut's TCB. At the conclusion of the argument, the Special Master made the following order on the record:

MASTER COHN: So I want it understood that while I'm ordering those particular documents to be produced, I do it with a clear understanding that should there be material contained therein which seems to be privileged material, I am not ordering you to turn over the privileged portions.

Now, sometimes that can be dealt with—I'm hoping to avoid in camera work, if it's at all possible in this case. Sometimes you can just make a log, a privilege log statement, as to the general category of material that was contained, provide that particular document, having Xeroxed out the offending language, as

you will, the language that would breach the privilege.

MR. CERIO: [Counsel for Baskin & Steingut] What I was going to suggest, if it is all right with you, is that we simply supplement our privilege log that we have already submitted with any item falling in these categories that would contain privileged matters and produce those that were not and then these would fall into the same categories or disputes that all the other documents are being dealt with.

MASTER COHN: Fine.

Transcript of Discovery Hearing October 26, 1987 at 143–144.

Thereafter, plaintiffs' counsel asked if the production of the TCB could be accomplished within 20 days. Counsel for Baskin & Steingut said, "Can we make it 30 days, just to be on the safe side". The Special Master replied, "Make it 30 days". Transcript at 147.

Said TCB were not produced within 30 days of October 26, 1987 and in fact had not been produced as late as June 28, 1988 when a subsequent hearing was held. The Special Master inquired of counsel for Baskin & Steingut why he and his clients had not complied with the October 26, 1987 order and produced a redacted set of TCB to plaintiffs' attorneys within 30 days. Counsel replied that he had not seen the subject TCB before the October 26, 1987 hearing and when he did see them afterward he discovered they were in a format he had not contemplated. Therefore, counsel states that he decided not to produce the documents, but only a privilege list. Transcript of Hearing of June 28, 1988, at 19–22.

Moreover, counsel admits that his client did not even furnish him with any of their TCB until mid December 1987 well after the expiration of the thirty-day time period which had been requested by *him*. Counsel further admits that at no time during the thirty-day period nor at any time thereafter did he or anyone else attempt to contact the Special Master for purposes of requesting an extension of the thirty-day time limitation. Transcript at 22.

Counsel's sole excuse for not complying with the order of the Special Master is that he and counsel for plaintiffs got into a dispute over the language to be used in reducing the oral order of the Special Master to a written order and that a written order was not signed by the Special Master as a result of this dispute. This, of course, is no excuse for ignoring a discovery order in this case. Counsel for Baskin & Steingut has produced no authority which holds that an order made in open court and on the record must be reduced to a written order before it becomes effective.

As can be seen from the foregoing, Baskin & Steingut simply ignored the Special Master's order regarding production of its TCB and eight months after that order was made was still failing to produce the subject documents. The conduct described above is all the more egregious as Baskin & Steingut was permitted by the order to fully protect its claims of privilege redacting any portion of the TCB it deemed to be a privileged communication. It is the recommendation of the Special Master that the Court order sanctions in a manner it deems appropriate under the circumstances.

## X  OTHER ITEMS

Irrespective of any of the foregoing determinations, Baskin & Steingut's privilege list items number 178 (number stamped 3833–3835 and 3855–3857); 184 (number stamped 3851–3854); and 252 (number stamped 6013–6015) are properly the subject of a claim of attorney/client privilege by Baskin & Steingut. These three documents relate to legal advice sought by Baskin & Steingut, as a client, from two other law firms. These documents need not be produced to plaintiffs.

As was noted at the outset of these recommendations, some of the issues raised by this motion are matters of first impression. Moreover, respondents have previously expressed their intention to seek appellate review of these recommendations to the extent that they are adopted and ordered by the Court. In light of the fore-

going, it is recommended that respondents' compliance with the Court's order be stayed for thirty (30) days from the date of the Court's order to afford them an opportunity to seek such appellate review.

DATED: November 16, 1988.