See also, D.C., 130 F.R.D. 416, D.C., 130 F.R.D. 424.

**Philip D. ROBERTS, et al., Plaintiffs,**

v.

**Werner HEIM, et al., Defendants.**

**Nos. C–84–8069 TEH, C–87–6174 TEH and C–88–3373 TEH.**

United States District Court, N.D. California.

March 8, 1990.

David B. Gold, Solomon B. Cera, San Francisco, Cal., Woodford G. Rowland, San Rafael, Cal., for plaintiffs.

Gerald A. Cohn, Orinda, Cal., Special Master.

R. Nicholas Gimbel, Hoyle, Morris & Kerr, Philadelphia, Pa., for Lewin Energy Corp., Vello A. Kuuskraa, Technology Catalysts, Inc. and R.L. DiCicco.

Robert L. Lofts, William L. Stern, Severson & Wersen, San Francisco, Cal., for Somers & Altenbach.

Richard Haas, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for Robert E. Altenbach.

James A. Cunningham, Boulder, Colo., in pro. per.

Neil E. Rogen, Weston, Mass., in pro. per.

Kurt C. Peterson, Mary C. Oppedahl, Crosby, Heafey, Roach & May, Oakland, Cal., for T. Kenneth Pyles.

Darryl M. Woo, Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., for Greg E. Bogdan.

James Robertson, Wilmer, Cutler & Pickering, Washington, D.C., for Lewin and Associates, Inc.

Robert J. Glynn, Gary A. Cerio, Glynn & Harvey, San Francisco, Cal., for Baskin & Steingut.

Douglas R. Young, Mark D. Petersen, Farella, Braun & Martel, San Francisco, Cal., for Fox & Co.

William R. Conklin, Redwood City, Cal., in pro. per.

Dennis Bourquin, Redwood City, Cal., David M. Greenberg, San Francisco, Cal., for TexOil International, Inc.

Darrell D. McCullough, Bailey, Colo., in pro. per.

Robert LaGuardia, Englewood, Colo., in pro. per.

Richard A. Ardoin, Bronson, Bronson & McKinnon, San Francisco, Cal., for Richard B. Basile, Glenda Exploration and Development Corp. and the Manhattan Partnerships.

Dan Biles, Gates & Clyde, Overland Park, Kan., for Gary E. Krause, Energy Associates, Inc. and the Wichita Partnerships.

Robert D. Radcliffe, Midvale, Utah, for Werner Heim, Hemisphere Licensing Corp., Elektra Energy Corp., Petrotec Systems, A.G., Petrotec Holdings, A.G., and Shalelectric, S.A.

Karl A. Schledwitz, Memphis, Tenn., for the Denver Partnerships.

Richard N. Patterson, Leslie G. Landau, Patrick Cooper, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., John A. Shutkin, Associate Gen. Counsel, New York City, for Peat, Marwick, Mitchell & Co.

Andrew R. Adler, Boornazian, Jensen & Garthe, Oakland, Cal., for Daniel L. Penner.

A. James Robertson, Peter J. Busch, James D. Leibson, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for Friedman & Shaftan.

Robert E. Carey, Jerry Fong, Carey & Carey, Palo Alto, Cal., for Republic International Corp.

James H. Seymour, Palo Alto, Cal., for Anvil Corp.

## ORDER

THELTON E. HENDERSON, District Judge.

The recommendations of the Special Master are adopted in their entirety and the parties are ordered to comply with their terms.

## RECOMMENDATION OF SPECIAL MASTER RE MOTION TO COMPEL FURTHER ANSWERS TO INTERROGATORIES

GERALD A. COHN, Special Master.

## I

### INTRODUCTION

This Recommendation deals with a motion by certain Defendants to compel Plaintiffs to provide further answers to interrogatories and a counter-motion by Plaintiffs to compel one of the moving Defendants, WERNER HEIM ("HEIM"), a Swiss national and resident to appear for deposition in the United States, to produce documents in the United States, and to respond to a request for admissions.[1] These cross motions are being brought in the context of a massive class action wherein Plaintiffs allege a world-wide conspiracy to defraud investors out of hundreds of millions of dollars.[2] In *Roberts v. Heim* 123 F.R.D. 614 (1989), the alleged scheme was summarized as follows:

1. Pursuant to a prior order of the Court, non-expert discovery was closed in this case many months ago. However, the Court specifically left the possibility of additional non-expert discovery to the determination of the Special Master, who is to make his recommendations in this regard in view of the facts and circumstances surrounding any additional discovery requests. As will be demonstrated in this Recommendation, sound reasons exist for ordering further discovery with respect to these cross motions.

2. The nature and extent of this lawsuit are more fully described in two previously reported decisions of this Court, *Roberts v. Heim*, 670 F.Supp.

"In brief, the crux of the scheme as alleged by plaintiffs is as follows. Plaintiffs claim that certain individuals, led by defendant, Heim, originated the idea of forming these partnerships to sell the investing public on the concept of EOR technology. These individuals recruited the general partners and then arranged for the partnerships to purchase for exorbitant fees from their corporate alter egos the exclusive license to use this 'new' technology. Plaintiffs allege this technology was unproven and basically without value, and that the licensors did not have the right to grant an exclusive license. Plaintiffs further allege the partnerships purchased mineral rights from other corporate alter egos of Heim and the others at prices between 700 and 10,000 times their real value." id at 618.

The moving parties who seek further answers to Defendants' joint second set of interrogatories ("Defendants' interrogatories")[3] are HEIM, an individual, PETROTEC SYSTEMS AG ("PETROTEC SYSTEMS"), a Swiss Corporation, PETROTEC HOLDINGS AG ("PETROTEC HOLDING"), a Swiss Corporation, HEMISPHERE LICENSING CORPORATION ("HEMISPHERE"), a Texas Corporation, SHALECTRIC SA ("SHALECTRIC"), a Panamanian Corporation, and ELECKTRA ENERGY CORPORATION ("ELECKTRA"), a Texas Corporation.

Plaintiffs' Fifth Amended Complaint, the operative complaint, alleges, among other things, that:

1466 (1987), and *Roberts v. Heim*, 123 F.R.D. 614 (1989).

3. In order to keep discovery in this huge case in a manageable form, the Special Master ordered all the Defendants to submit any interrogatories they wished to serve upon Plaintiffs to defense liason counsel and to participate in the drafting of a joint set of interrogatories to Plaintiffs. No Defendant was permitted to serve separate individual set of interrogatories on Plaintiffs. Interrogatories number 131 through 137 were ostensibly submitted on behalf of HEIM and the corporate entities described in this paragraph.

1. PETROTEC SYSTEMS is owned by HEIM and another individual and is the parent of ELECTRA, HEMISPHERE, and other corporations.

2. PETROTEC HOLDING is owned by HEIM and another individual, and is the parent of PETROTEC SYSTEMS and another corporation.

3. SHALECTRIC was formed by HEIM and that substantial sums of investors money have been diverted to this Panamanian corporation.

4. ELECKTRA was formed by HEIM and another individual and is a subsidiary of PETROTEC SYSTEMS and was a promoter with respect to certain of the partnerships in which Plaintiffs invested.

5. HEMISPHERE was a licensor of EOR technologies and at various times relevant to this lawsuit HEIM served as either president and/or chairman of the board of directors of HEMISPHERE.

After a careful review of the extensive briefing and documentation provided by the parties and further research by the Special Master, who has supervised discovery in this case for over four years, it is the recommendation of the Special Master that both motions should be granted, as will be more fully explained below. For the purpose of logical exposition Plaintiffs' counter-motion will be dealt with first.

## II

## PLAINTIFFS' COUNTER MOTION

### A. GENERAL BACKGROUND.

Initially it should be noted that HEIM and the corporate entities referred to above were served with process, appeared in this case years ago, and have never contested this Court's jurisdiction. This was reaffirmed by their counsel at the time of

oral argument. Therefore, there are no jurisdictional questions which have to be addressed in order for the Court to decide these cross motions.

At the time of oral argument it was also agreed by the parties that some time in August, 1986, after this lawsuit was commenced but before the Court issued any order prohibiting the removal of documents from the United States by Defendants, ELECKTRA and HEMISPHERE closed their United States offices and shipped all their documents to the Canton of Zurich, Switzerland, where HEIM resides. None of these documents have ever been produced in this lawsuit.

HEIM and the corporate entities are represented by one attorney who stated at the time of oral argument that HEIM presently has possession and control of all documents pertaining to these corporate entities and their involvement with the subject matter of this lawsuit. He further stated that he has seen approximately ten three- or four-drawer file cabinets in an office in HEIM's home which he understands contain the documentation of these corporations. Counsel also claims that although he is counsel for HEIM and the corporations HEIM has never permitted him access to these documents and therefore he is unfamiliar with their contents.

### B. PRIOR PROCEEDINGS BEFORE THIS COURT.

In February, 1989, FRIEDMAN & SHAFTAN, P.C., a Defendant in this case, moved the Court for an order issuing letters rogatory so that it could take HEIM's deposition by written interrogatories in Switzerland pursuant to Rule 28(b) [4] as HEIM refused to appear in the United States and give his deposition pursuant to Rule 26(a). Plaintiffs opposed this motion asserting that:

"The form of the requested discovery—deposition by interrogatory—

---

**4.** All further references in this Recommendation to "Rules" are to the Federal Rules of Civil Procedure.

does nothing but play into the hands of defendant Heim and other defendants since it will allow for, in essence, an exculpatory, self-serving declaration to be given by Heim with no opportunity for the parties to cross-examine him or even to object to the interrogatories themselves. In addition, under Friedman and Shaftan's proposal, Heim will be able to elude examination on incriminating documents....

"Rather than permit the one-sided and belated discovery sought by defendant Friedman & Shaftan, P.C., plaintiffs submit that this Court should order Heim to appear in the Untied States for a testimonial deposition...." Plaintiffs' Memorandum In Opposition to Motion For Order Issuing Letters Rogatory, page 1 (March 7, 1989).

. . . .

"No cross-examination of Heim will be possible under Friedman & Shaftan's proposal, nor can any objections be made to the interrogatories themselves. This is completely unfair, since it provides Heim an opportunity to justify his wrongful conduct without any challenge.... Heim should not be permitted the opportunity to provide a one-sided, unchallenged statement of the facts, after refusing to cooperate with plaintiffs' discovery efforts for years now, especially in a situation where his credibility will not be subject to challenge. We submit that such a procedure would be inherently unfair and would not aid the Court in the search for the truth, which, after all, is the goal of discovery." id, page 5.

On March 14, 1989, the Court granted FRIEDMAN & SHAFTAN's motion. The Court took Plaintiffs' request that HEIM be ordered to appear for deposition in the United States under submission and ordered HEIM's counsel to provide the Court with a chronological list of HEIM's travels to the United States since this lawsuit was filed together with an explanation of the purpose of these vists. HEIM's counsel was also ordered to explain the legal basis for HEIM's refusal to comply with discovery in the United States.

On March 28, 1989, letters rogatory were issued by this Court to the appropriate Swiss authorities.

On April 7, 1989, a group of defendants brought a motion before the Special Master to compel Plaintiffs to file further answers to Defendants' interrogatories, which motion was granted. No one appeared at the hearing of the motion on behalf of HEIM or the subject corporations, although HEIM and the corporations were identified as moving parties in the moving papers.

On April 10, 1989, Plaintiffs' counsel wrote to the Court and asserted that since HEIM was a moving party to compel discovery from Plaintiffs pursuant to the Federal Rules of Civil Procedure, HEIM should likewise be subject to discovery in the United States pursuant to those Rules.

On April 12, 1989, HEIM's counsel wrote to the Court in response to Plaintiffs' counsel's letter of April 10, 1989, and stated, among other things:

"In his letter to the Court, Mr. Cera attempts to point out that Mr. Heim was among the moving parties in connection with a Motion to Compel Plaintiffs to file further responses to Defendants' Second Joint Set of Contention Interrogatories. This matter apparently was heard by the Special Master on April 7, 1989. I was not a signatory to any of the moving documents and therefore take exception to Mr. Cera's assertion."

On April 26, 1989, pursuant to an order to show cause, the Court found HEIM's counsel to be in violation of the Court's March 14, 1989, order for failing to provide the Court with any information regarding HEIM's travel to the United States and ordered monetary sanctions against him.

On May 22, 1989, the Court denied Plaintiffs' motion for an order requiring HEIM to appear in the United States for deposition in light of the fact that pursuant to the Court's March 28, 1989, letters rogatory Swiss authorities had already issued an

order requiring HEIM to appear in Switzerland for a deposition on written interrogatories. In its May 22, 1989, order the Court specifically left open the possibility that HEIM might, at some time in the future, be ordered to appear for a deposition in the United States.

On June 7, 1989, Plaintiffs' counsel wrote to HEIM's counsel and asked for clarification as to whether HEIM was, or was not, a moving party who sought to compel Plaintiffs to file further answers to Defendants' interrogatories.

On June 14, 1989, *contrary to the representation which had been made to the Court in his April 12, 1989, letter* HEIM's counsel stated that "at this point, I would prefer to consider my clients as moving parties, even though I had no opportunity to review the moving papers."

On or about October 25, 1989, as Plaintiffs had not filed any further answers to those interrogatories directed to allegations made against HEIM, HEIM, through his counsel, filed a motion to compel further answers to Defendants' interrogatories, which motion is the subject of this Recommendation.

In response to this motion Plaintiffs filed their counter-motion to compel HEIM to give his deposition in the United States and to produce documents in the United States and to respond to Plaintiffs' request for admissions.

## C. THE SPECIAL MASTER'S RECOMMENDATIONS REGARDING PLAINTIFFS' COUNTER MOTION.

### 1. HEIM'S COUNSEL MISLED THIS COURT AS TO A MATERIAL FACT.

■ Before embarking on any analysis of the legal issues raised by this motion it must be stated that there is no question that HEIM's counsel misled this Court as to a material fact when he wrote his letter of April 12, 1989. At the very time this Court was considering whether it should compel HEIM to come to the United States and give his deposition and had before it Plaintiffs' counsel's letter of April 10, 1989,

HEIM's counsel deliberately represented to the Court in his letter of April 12, 1989, that HEIM was not attempting to use the Federal Rules of Civil Procedure to compel discovery from Plaintiffs. This letter was a significant factor in the Court's subsequent order of May 22, 1989, which ruled that HEIM did not have to come to the United States and give his deposition.

### 2. HEIM WOULD NOT BE COMPELLED TO VIOLATE SWISS LAW SHOULD THIS COURT ORDER HIM TO APPEAR FOR HIS DEPOSITION IN THE UNITED STATES OR TO PRODUCE DOCUMENTS IN THE UNITED STATES OR TO RESPOND TO PLAINTIFFS' REQUEST FOR ADMISSIONS.

HEIM asserts that he would be compelled to violate Swiss law should this Court enter an order which would compel him to give his deposition in the United States or to produce documents in the United States or to respond to any other discovery in the United States. HEIM asserts that Plaintiffs must be limited in their discovery to obtaining letters rogatory which can be utilized only through the assistance of Swiss authorities.

As noted above, Swiss authorities did honor this Court's request pursuant to letters rogatory and a Swiss District Judge, on June 2, 1989, before a court reporter, read written interrogatories to HEIM who then responded orally.

As the crux of HEIM's argument against requiring him to respond to discovery in the United States is that any such order by this Court would compel HEIM to violate Swiss law and would subject him to potential criminal prosecution in Switzerland, we must look to pertinent Swiss law to see if this claim is correct. In support of his contention HEIM cites Article 273 of the Swiss Penal Code, which provides in pertinent part:

"Whoever makes available a manufacturing or business secret to a foreign governmental agency or a foreign organization or private enterprise or to an agent of any of them; shall be subject to

imprisonment and in grave cases to imprisonment in a penitentiary. The imprisonment may be combined with a fine."

HEIM also cites further Swiss authority which holds that the term "business secret" as used in Article 273 has been defined to include "all facts of business life to the extent that there are interests worthy of protection in keeping them confidential." *Swiss Federal Authority VA*, 98 BGE IV 209 (September 7, 1972).

■ First, HEIM has made no attempt whatsoever to show that he is in possession of "business secrets" as that term is defined by the Swiss Federal Attorney. In disputes such as this one, the Ninth Circuit has made clear, "The party relying on foreign law has the burden of showing that such law bars production." *United States v. Vetco, Inc.* 691 F.2d 1281, 1289 (9th Cir.1981), *In re Grand Jury Proceedings* 873 F.2d 238, 239 (9th Cir.1989).

Second, Article 273 of the Swiss Penal Code cited above was carefully analyzed by the Ninth Circuit in *Vetco,* supra, at pages 1286–1289. In that case appellants contended that compliance with summonses issued by the Internal Revenue Service for the production of certain books and records located in Switzerland would result in a violation of Article 273.[5] Appellants, like HEIM, also cited the above-quoted statement from the Swiss Federal Attorney. In response, the *Vetco* Court citing further Swiss authority [6] held:

> "The Swiss Attorney General has distinguished between cases where there is a public interest in keeping information secret, and cases where only private interests are involved. In the latter type of case, Article 273 prohibits disclosure only if the party whose business secret is being divulged does not consent...."

Thus, Switzerland's only interest is in protecting the privacy of its non-consenting domiciliaries." *Vetco,* page 1289.

HEIM has made no claim that there is any public interest in keeping information he possesses secret, nor has he attempted to obtain any affidavit or other statement from Swiss authorities which would demonstrate any such public interest in Switzerland with respect to this lawsuit and its possible effect on HEIM, the corporations, or other Swiss interests.

As the introductory portion of this Recommendation makes clear, HEIM is alleged to be either an owner or control person with respect to the five corporations whose records he holds. HEIM has not disputed this contention in response to Plaintiffs' counter-motion. The teaching of the Swiss Attorney General as cited above is that Article 273 does not prohibit a person from divulging his own business affairs but only from divulging the business affairs of others without their consent. HEIM has made no showing that he is protecting any interest but his own. No person or entity has filed any affidavit or other statement with this Court claiming that the discovery requested by Plaintiffs would harm or infringe on his or its interest in any manner. Additionally, any interest HEIM has in maintaining confidentiality is protected by a protective order previously entered in this case for the benefit of all the litigants.

If any doubt remained as to the correctness of the above interpretation of Article 273 and the ability of HEIM to participate in discovery in the United States pursuant to the Federal Rules of Civil Procedure without fear of an Article 273 sanction, it was totally dispelled at the time of HEIM's deposition in Switzerland on June 2, 1989, pursuant to letters rogatory. That pro-

---

**5.** The *Vetco* Court noted that it was dealing with IRS summonses which "... appear to serve a more pressing national function than civil discovery." *Vetco,* supra, page 1288. In this regard it should be noted that litigation is presently pending in the Tax Court arising out of the same transactions which give rise to this lawsuit wherein the IRS is claiming a sum in excess of one billion dollars for unpaid taxes, interest and penalties. At the request of the IRS this Court

has previously entered an order allowing it access to all of Plaintiffs' discovery in this case.

**6.** Gerber, Einige Probleme Des Wirtschaftlichen Nachrichtendienstes, Zeitschrift Fur Schweiz 257 (1977). There appears to be a typographical error in this citation which should read: "Zeitschrift fur Schweizerisches Recht", which in English means "Journal of Swiss Law."

ceeding was held in the District Court Meilen, Canton Zurich, and was presided over by Judge Egger of that Court.

In making his introductory statement for the record, Judge Egger, who, we may presume, is familiar with Article 273, stated the proceedings were being conducted pursuant to Swiss law, in Switzerland, and therefore would be conducted in German. Then, addressing HEIM, Judge Egger stated:

> "... had you wished to do so, you could have testified in the United States, that would have been one possibility ..."

The Special Master has read the entire transcript of the June 2, 1989, proceeding in Switzerland and found nothing which would condition or modify Judge Egger's statement quoted above. At no time did Judge Egger either state or imply that HEIM would be subject to Swiss penal sanctions if he were to give his deposition in the United States.[7]

In short, contrary to HEIM's assertion, if this Court were to order HEIM to come to the United States and give his deposition or to produce in the United States documents he now holds in Switzerland or to respond to a request for admissions, he would not be subject to penal sanctions in Switzerland.

### III

### PLAINTIFFS NEED NOT RESORT TO THE HAGUE CONVENTION

 HEIM apparently concedes that Plaintiffs need not resort to the *Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters* ("Convention") for two reasons. First, although Switzerland signed the Convention in 1985, this act has never been ratified by the Swiss Parliament. Second, even if Switzerland was a party to the Convention, the United States Supreme Court has held in *Societe Nationale Industrielle Aerospatiale, et al. v. United States District Court for the Southern District of Iowa,*

482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987) that the discovery procedures provided by the Convention do not necessarily govern discovery for foreign litigants before an American court. The Court determined that the language of the Convention is non-mandatory and was intended as an alternative to other discovery procedures. The Court went on to say that a contrary interpretation would amount to a serious interference with the jurisdiction of American courts whenever a party happened to be a foreign national. The Court then held that where an American court has jurisdiction over a party it still has recourse to the Federal Rules of Civil Procedure as a consequence of its jurisdiction and can compel the production of documents in possession of a litigant even when they are located in a foreign country.

In providing guidance to lower courts, the Supreme Court stated:

> "The exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke."
>
> . . . .
>
> "American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state. We do not articulate specific rules to guide this delicate task of adjudication." *Societe Nationale,* 482 U.S. at page 546, 107 S.Ct. at page 2556–57.

Even though Switzerland is not a party to the Convention, the Special Master has been guided in part by the general guidelines quoted above in making this recommendation to the Court.

However, HEIM has noted that the Swiss government filed a brief as Amicus Curiae in support of the French petitioners

---

**7.** "The Court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissable under the Federal Rules of Evidence." Rule 44.1.

in *Societe Nationale* and has provided the Special Master with a copy of this amicus brief in order to highlight the sensitivity of the Swiss government with respect to foreign discovery and its impact on Swiss sovereignty.

The Swiss government in its brief argued that the procedures of the Convention should control discovery in Switzerland and not the Federal Rules of Civil Procedure. In particular, it was pointed out that discovery under the Federal Rules of Civil Procedure could, for example, violate Swiss sovereignty should an order of a Federal Court compel a violation of Article 273, which article is referred to in section IIC.2. of this Recommendation. However, as noted above, the discovery Plaintiffs are seeking in this case will not compel a violation of Article 273, and, more significantly, the Supreme Court has rejected the arguments of the Swiss government as set forth in its amicus brief.

## IV

## OTHER REASONS EXIST FOR GRANTING PLAINTIFFS' CROSS MOTION

### A. IT IS UNFAIR TO PERMIT HEIM AND THE CORPORATIONS TO TAKE DISCOVERY OF PLAINTIFFS PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE WHILE DENYING PLAINTIFFS THAT RIGHT AS TO HEIM AND THE CORPORATIONS.

As Plaintiffs have pointed out in their briefing to this Court, taking a deposition limited to written interrogatories which are provided to the deponent prior to his examination bears little resemblance to the give and take of deposition practice pursuant to Rule 26. Moreover, Plaintiffs have been deprived of other means of discovery, such as production of documents and admissions.

In a recent case, a German defendant and cross-claimant argued that the plaintiff in that case was limited to taking his discovery of defendant and cross-claimant through the vehicle of the Hague Convention (referred to Section III above) even though that defendant and cross-claimant was pursuing its discovery pursuant to the Federal Rules of Civil Procedure. *Haynes v. Kleinewefers* 119 F.R.D. 335 (E.D.N.Y. 1988). The Court noted the Supreme Court's holding in *Societe Nationale*, supra, and then stated the following:

"Additionally, the interests of the United States in seeing that all litigants are treated fairly and equally in its courts would not be served in this case by an order which would have the effect of forcing all parties save Kleinewefers to proceed with discovery under the Hague Convention. Kleinewefers has sought permission to bring claims against its codefendant Lembo and plaintiff's employer Kalex. It is not simply a defendant in this action. To require that all parties seeking discovery of Kleinewefers, including parties against whom it has brought claims, employ the more complicated and expensive procedures of the Hague Convention while Kleinewefers proceeds with its discovery under the Federal Rules, is not an equitable result." *Haynes*, page 338.

The Special Master concurs with this reasoning and believes that it would be unfair and inequitable to permit HEIM and the corporations to take discovery of Plaintiffs pursuant to the Federal Rules of Civil Procedure while prohibiting Plaintiffs from taking such discovery of them.

### B. THE FACT THAT THIS CASE IS A CLASS ACTION IMPOSES SPECIAL OBLIGATIONS ON THE COURT AND THE PARTIES.

As previously noted, this case is a very large class action in which Plaintiffs are claiming damages in the hundreds of millions of dollars. In addition to other duties in this case, the Special Master has been ordered by the Court to oversee settlement negotiations among the parties. These negotiations have commenced and the Special Master has had discussions with all the major parties and/or their counsel. In the course of these discussions it became apparent that after four years of very exten-

sive discovery there are still significant gaps in the information presently available.

In particular, one item warrants special mention. The Special Master has been informed that of the cash which was raised from Plaintiffs in the course of this venture, approximately one hundred million dollars ($100,000,000.00) cannot be traced as it "went off shore" to various foreign tax havens which cater to clients who demand bank secrecy.

■ Even in these days of "soft dollars," one hundred million dollars is not an insignificant sum. Both Plaintiffs and this Court are obligated to ensure to the unnamed Plaintiffs that any settlement of this case is fair, adequate, and reasonable. *Officers for Justice v. Civil Service Com'm, etc.* 688 F.2d 615, 625 (9th Cir. 1982). One factor to be considered by the Court in approving any proposed settlement is the defendants' ability to pay a judgement larger than the amount provided for by settlement. *In re Wash. Public Power Supply Sys. Sec. Lit,* 720 F.Supp. 1379 (D.Ariz.1989). While there can be no certainty as to what, if any, information HEIM possesses or what the documents stored in Switzerland will reveal, it is the obligation of this Court and Plaintiffs to see that a reasonable inquiry is made.

## V

### THE QUESTION RAISED BY PLAINTIFFS AS TO THE ADMISSIBILITY OF THE TESTIMONY PREVIOUSLY GIVEN BY HEIM IN SWITZERLAND IS PREMATURE

■ In their memorandum, Plaintiffs, by way of a footnote (page 15, note 14) suggest that should this Court not order HEIM to give his deposition in the United States it should order that HEIM's Swiss deposition described above be stricken from the record. Plaintiffs advance several reasons for this request.

Plaintiffs' request evoked a vigorous response from FRIEDMAN & SHAFTAN, the party who brought the motion to obtain the letters rogatory which resulted in HEIM's deposition in Switzerland. Although FRIEDMAN & SHAFTAN take no position as to the merits of Plaintiffs' motion to compel HEIM to respond to discovery in the United States, it points out that the question of whether HEIM's testimony given in Switzerland is admissible in evidence or whether it should be stricken is premature as this testimony has yet to be offered for any purpose in this lawsuit. The Special Master concurs with this contention. Moreover, at oral argument Plaintiffs' counsel stated that should their motion be granted, they would withdraw their request to strike HEIM's testimony given in Switzerland. Therefore, nothing in this Recommendation shall be construed to convey any opinion as to the admissibility of this testimony.

## VI

### PLAINTIFFS SHOULD PROVIDE HEIM AND THE CORPORATIONS WITH ANSWERS TO THEIR INTERROGATORIES

■ Plaintiffs failed to answer the interrogatories of HEIM and the corporations for two reasons. First, as demonstrated above in section IIB, at one point counsel for HEIM and the corporations represented to the Court that they were not moving to have Plaintiffs answer their interrogatories. Second, Plaintiffs have taken the position that it was unfair and inequitable to require them to respond to the interrogatories of HEIM and the corporations propounded pursuant to the Federal Rules of Civil Procedure at the same time they were claiming to be exempt from discovery pursuant to the Federal Rules of Civil Procedure.

Should the Court order HEIM and the corporations to respond to discovery pursuant to the Federal Rules of Civil Procedure, Plaintiffs will no longer have any reason to refuse to answer their interrogatories.

## VII

### CONCLUSION

In view of the foregoing, it is the recommendation of the Special Master that:

1. HEIM be ordered to produce in San Francisco, at a location to be agreed upon

by the parties, all the books and records of the five corporations named above so that they may be inspected and copied by all parties to this lawsuit. The cost of such production shall be borne by HEIM and/or the corporations.

2. The production described in paragraph 1 above shall take place within thirty (30) days of the date of the Court's order.

3. Within thirty (30) days of the Court's order, HEIM shall respond to Plaintiffs' request for admissions.

4. HEIM shall, at his own expense, make himself available in San Francisco for the purpose of having his deposition taken. HEIM shall remain in San Francisco until all parties have completed their questioning. The Special Master may attend this deposition in order to expedite it and make immediate rulings with respect to any questions which may arise in the course of the deposition.

5. HEIM's deposition shall commence no sooner than fourteen (14) days after the books and records described in paragraph 1 have been produced in San Francisco and no later than twenty-one (21) days after production.

6. Within thirty (30) days after the completion of HEIM's deposition, Plaintiffs shall further answer interrogatories number 131 through 137.

DATED: March 5, 1990.